THE STATE, THE TRUSTEES OF THE FIRST PRESBYTERIAN
    CHURCH, PROSECUTORS, v. ALBERT W. SILVERTHORN,
    COLLECTOR OF KNOWLTON TOWNSHIP.

A mortgage held by a church as security for a sum of money bequeathed to
    said church, with a direction that the interest therefrom is to be used
    in the payment of the minister's salary, is exempt from taxation, on
    the ground that the sum secured is an endowment of a religious society.

On *certiorari.*

The following is the state of the case prepared by counsel:
William Mackey, of Oxford township, deceased, in and by
his last will and testament, duly admitted to probate by the
surrogate of Warren county on July 20th, 1882, provided as
follows: "I give and bequeath to the First Presbyterian
Church of Oxford, Warren county, the sum of eighteen hun-
dred dollars to be secured by bond and mortgage, and the in-
terest of fifteen hundred dollars of the same to be used towards
the payment of the salary of the minister, and the interest of
the remaining $300.00 to be used," &c.

During his lifetime he held a bond and mortgage for $1,500
against one A. Trimmer, on lands in Knowlton township.
In the settlement of the estate of said deceased the said bond
and mortgage of $1,500 on lands of said Trimmer was, by his
executors, duly assigned and turned over to the said trustees
of said church as part of the said legacy and bequest, who
became then and there the owners and holders of the said
mortgage under the terms and conditions of said will, and
who still hold the same and apply the interest to the payment
of the salary of the minister.

In the year 1888 said A. Trimmer claimed a deduction for
said mortgage to the assessor of Knowlton township, who
allowed the deduction and thereby assessed the said mortgage
to "The Trustees of the First Presbyterian Church of Ox-
ford," the owners and holders of said mortgage. The said
trustees refuse to pay the tax assessed on said mortgage.

Argued at June Term, 1889, before Justices REED, MAGIE and GARRISON.

For the plaintiff in *certiorari, Wm. H. Morrow.*

For the defendant, *N. Harris.*

The opinion of the court was delivered by

REED, J.    The question presented is, whether the amount assessed is exempt upon the ground that it is an endowment or fund of a religious society.

The statute relieves the latter kind of property from liability to be taxed.

That the property mentioned in the state of the case is an endowment seems to me to be too obvious for argument.

A fund of money so settled that the income therefrom shall be a permanent aid in carrying on the work of a religious society is the most obvious instance of an endowment, as such term is defined by lexicographers and as the subject is known in the affairs of men.

Such an arrangement is within the definition of an endowment formulated by Mr. Justice Bedle in the case of *The State, First Reformed Dutch Church, pros.,* v. *Lyons,* 3 *Vroom* 360.

As I understand the brief of the counsel for the defendant, his contention is, that there are two features characterizing this fund, either of which strips it of the immunity which the statute confers upon an endowment.

The first feature is, that the testator from whose will the gift arises, directed that the income from the amount bequeathed should be applied to the payment of the minister's salary.    The second feature is, that the testator directed that the principal should be secured by bond and mortgage, and that it follows that when so secured the property assumed a shape that subjected it to taxation as a mortgage.

In respect to the first contention, I think it is evident that the gift of the testator is none the less an endowment because of the fact that the income arising from the sum bequeathed

is to be applied to a special object, so long as that object comes within the field of operations for which the religious society is organized.   Many, perhaps most, of the endowments of our colleges and charitable institutions are, by direction of the donor, applicable only to advancing those certain branches of education or other charitable work in which the donor was personally interested.

No one can successfully maintain the proposition, that such directions deprive the gift of the character of an endowment, at least if it be limited to the aid of one of the objects included within the general field of operations in which the society can legitimately engage.

One of the usual, although not universal, features of a religious society, is the employment of a stated minister to instruct in religious matters, to conduct religious services, and to perform marriage, burial and other ceremonies customary in civilized society.   A fund designated to assist in the employment of such an usual and important officer, is devoted to an object most obviously essential to the work of a religious society.

The counsel for the defendant seems to regard a fund, the income from which is to be applied in payment of a minister's salary, as akin to parsonage property.   As it has been held that a parsonage purchased by funds donated for that purpose is not taxable (*State* v. *Lyons, supra*), he urges that the present property stands upon a similar footing.

But a glance at the reasoning upon which the court sustained the taxability of the parsonage property will show that the case then under consideration and the present case are in no way related.

The court in that case held that the *corpus* of an endowment could not exist in the shape of real estate and escape taxation.   This conclusion resulted from the fact that the word " endowment " was so coupled with the word " fund " as to display a legislative intent to use both terms to describe property *ejusdem generis*.   Therefore, inasmuch as a fund could

not exist in the form of realty, neither could an endowment, as the word was employed in the statute, so exist.

This consideration, taken together with other parts of the statute which explicitly prescribed the kind and quantity of the real estate which should be exempt, led the court to the conclusion that the *corpus* of a non-taxable endowment must consist of personal property. Whatever significance the decision invoked by defendants possesses for us in solving the present question, is in the direction of sustaining the exemption of the present fund from taxation.

I see no substance in this point made by the defendant.

Nor do I regard as tenable the second point, namely, that because the will of the donor directed that the fund should be secured by a mortgage, therefore the mortgage so taken as security became taxable. Perhaps the ground taken is broader than this and claims that, without respect to the testator's directions, the fund having been secured by a mortgage it became taxable as a mortgage.

It is clear that this result cannot be claimed on the ground that the property is thus transmuted into realty, for it is not. It remains personalty.

The real contention, however, is, that it is taxable by force of the act of 1866. *Rev., p.* 1150.

But the purpose of that act is only to direct where and how, in certain instances, mortgages are to be assessed.

It does not repeal any part of the general act which relates to the kinds of property which are exempt.

It does not purport to be, nor is it an authority for the taxation of mortgages, but only prescribes the method of their assessment. It only deals with those mortgages which were already taxable. Mortgages which were exempt by the terms of the general act, because they secured the *corpus* of an endowment, do not become taxable by the fact that the act of 1866, as already remarked, fixes the place where assessments for mortgages shall be made and collected.

The assessment against the prosecutors is vacated, with costs.